FIRST NATIONAL BANK OF BIRMINGHAM, trustee, *v.*
CARMICHAEL *et al.*

No. 14936.   October 6, 1944.

*Alex M. Hitz,* for plaintiff.

*Hooper & Miller, Heyman, Howell & Heyman, John W. Crenshaw,* and *J. H. Porter,* for defendants.

JENKINS, Presiding Justice.  1.  The Code, § 28-201 (2), pro-

vides: "The following acts by debtors shall be fraudulent in law against creditors and others, and as to them null and void, viz: . . Every conveyance of real or personal estate, by writing or otherwise, and every bond, suit, judgment and execution, or contract of any description, had or made with the intention to delay or defraud creditors, and such intention known to the party taking. A bona fide transaction on a valuable consideration, and without notice or ground for reasonable suspicion, shall be valid." The trial judge having given the above Code section in charge to the jury, it was not error, especially in the absence of a request, to fail to charge the following language: "In this case, gentlemen, if you believe that the defendant Carmichael executed the deeds in question, to wit: the Barnett Street property or properties, with the intention to hinder, delay, or defraud the plaintiff; and if you believe that such intention was known to the defendant, Miss Smith, now Mrs. Carmichael, or that she had reasonable ground to suspect the same, then and in that event, on that issue, you would find for the plaintiff, and your finding, if it should be for the plaintiff on that issue, would result in a cancellation of those deeds. If you believe that the defendant Carmichael executed the deeds in question with intention to hinder, delay, or defraud the plaintiff, but find that such intention was not actually known to Miss Smith, now Mrs. Carmichael, but that she had reasonable ground to suspect the same or ground for reasonable suspicion, then in that event on that issue you would find for the plaintiff."

(a) The assignment of error is, not that the court failed to give in charge the principle of law involved in the language stated, but that he failed to charge the specific language set forth in the exception. The exception fails to state that any sort of request so to do was made, but, even had this been done, a request to charge must be in writing; and in this case, just as in *Wells* v. *Blitch*, 184 *Ga.* 616 (8) (192 S. E. 209), "The ground of the motion for a new trial complaining of the court's refusal to give a requested charge does not state that the request was in writing, and thus presents no question of error for determination by this court."

(b) It is true that, after giving in charge the provision of the Code, § 28-201 (2), that "a bona fide transaction on a valuable consideration and without notice *or ground for reasonable sus-*

*picion* shall be valid," the court told the jury in another portion of the charge that: "If you believe that the Barnett Street property deeds were not voluntary but were for a valuable consideration; that there was no intent by the defendant Carmichael to defraud, or that, if there was such intent, that the same was unknown to Miss Smith, now Mrs. Carmichael; then and in that event, you would find that issue for the defendants." However, no exception is taken to the correctness of this latter instruction, and the exception now being dealt with on the *failure* to charge does not couple such failure with the giving of the excerpt just quoted. But even had the excerpt last quoted been attacked, it has been held (*Benton* v. *Benton,* 164 *Ga.* 541 (4), 546, 139 S. E. 68) that the error therein contained was rendered harmless and was sufficiently corrected by giving in charge the correct rule embodied in the Code section just quoted.

2. On cross-examination, the defendant, over objection, developed the fact that the plaintiff bid in the Birmingham property at the foreclosure sale, the amount paid at such sale, its value at the time of such sale, and its present value, and the fact that the plaintiff still owns it; and by his own testimony, over objection, the defendant swore that, "In 1933, I had the word of Mr. Zukoski, vice-president of the First National Bank of Birmingham, that there would be no deficiency claim against me." The grounds of objection to this evidence were: (a) that it was irrelevant to the issues; (b) that it was not restricted to evidence given on direct examination; and (c) that it was upon matter res adjudicata, as determined by the deficiency-judgment suit. The exceptions to its admission showed that such testimony was not admitted generally, and not on any question as to whether Carmichael was originally indebted to the plaintiff, which question the court stated was not in issue, but was admitted solely to illustrate the one issue submitted in the charge of the court, to wit, whether the transfer was made with fraudulent intent. After such announcement by the court, no further objection was made by the plaintiff to this testimony.

(a) In dealing with objections to the evidence, marked "a" and "c" under exceptions taken in accordance therewith, the court agreed with the plaintiff that the validity of the defendant's indebtedness to it was not an issue in the case and was not to be

attacked, nor was it in fact sought to be attacked. Therefore the question is whether such evidence relating to the foreclosure, the value of the Birmingham property bought in by the plaintiff, and the plaintiff's alleged statement that it did not intend to obtain a deficiency judgment, bore on the one vital question for which it was admitted, to wit, whether the conveyance by the defendant was fraudulent or made in good faith. It is the rule that, "Where in response to an objection of a general nature to evidence the court states that it is admitted for a limited purpose, and the objecting party makes no further objection thereto, no valid assign-, ment of error can be based upon the court's act in admitting the evidence." *Mickle* v. *Moore,* 193 *Ga.* 150 (17 S. E. 2d, 728). Accordingly, there being no renewal of the objection to the admission of the testimony for the particular and limited purpose outlined by the court, the general exception on the grounds originally made in the court below does not raise any question as to its admissibility for the restricted purpose for which it was actually allowed.

(b) "The right of cross-examination, thorough and sifting, shall belong to every party as to the witnesses called against him." Code, § 38-1705. "Where a witness is voluntarily. called by a party and examined, even though to a formal point only, the court cannot restrict the right of cross-examination of the witness to the formal point upon which the party has examined him, but the opposite party has the right to cross-examine the witness as to all points in the case." *Cowart* v. *Strickland,* 149 *Ga.* 397 (2) (100 S. E. 447, 7 A. L. R. 1110). Therefore, even had the question been properly presented, we find no error in the overruling of the objection that the cross-examination was not restricted to evidence given by the witness upon direct examination.

(c) Moreover, irrespective of the validity of any exceptions taken, the evidence elicited on cross-examination and the testimony of the defendant himself that, "In 1933, I had the word·of Mr. Zukoski, vice-president of the First National Bank of Birmingham, that there would be no deficiency claim against me," had probative value, and therefore was in fact properly admitted for the one restricted purpose outlined by the court, to wit, as illustrating the presence or absence of a fraudulent intent and purpose on the part of the defendant in making the transfer of the property here in-

volved. While it is true that the plaintiff introduced the testimony of two of its officials as to Carmichael's indebtedness to the plaintiff, who stated that, before the alleged fraudulent transfer of the properties, the plaintiff had written Carmichael concerning the deficiency claim which the plaintiff held against him, resulting from its foreclosure of a mortgage he had given the plaintiff on Birmingham property, in which letters it had threatened suit on such deficiency claim, which after the transfers had been made was in fact reduced to judgment, it is also true that the receipt of any such letters was denied by the defendant, and while one of the plaintiff's officials swore that such letters had been dictated by him there was no proof as to their having been addressed, stamped, or put in the mails so as to conform to the requirements for showing a presumptive receipt. See *Rawleigh Medical Co.* v. *Burney,* 25 *Ga. App.* 20 (102 S. E. 358).

3. The plaintiff excepted to the admission of the testimony of Mrs. D. L. Carmichael, the grantee in the deeds alleged to have been fraudulently made, that in 1939 (after such conveyances, but before her marriage to D. L. Carmichael) she borrowed $1063.58 from a bank, which was used to improve the basement in one of the houses conveyed, and which had been repaid; the objection being that this testimony was irrelevant because it referred to a transaction after the conveyances in question. The evidence showed that Carmichael lived in these basement quarters, collected rents, and otherwise handled matters relating to the properties, which the plaintiff contended evidenced a fraudulent conveyance. This evidence was, therefore, admissible to illustrate the defendant's contention that the transaction was bona fide, and that Carmichael's possession and management was on behalf of Sarah M. Smith, the grantee, who later became Mrs. Carmichael. The same ruling applies to similar objections made to the introduction of documentary evidence relating to the same loan, and to checks and withdrawal slips of Sarah Smith, the proceeds of which she testified she had turned over to Carmichael in cash up to the amount of $900, before the conveyances. A similar objection to the admission of a mortgage from Mrs. D. L. Carmichael to "Mr. Seckinger" cannot be considered, as neither the mortgage nor any brief thereof appears in the record.

4. "It is never error to refuse to direct a verdict." *Western*

*& Atlantic Railroad* v. *Michael,* 178 *Ga.* 1 (3) (172 S. E. 66);
*Harmon* v. *Gaddy,* 193 *Ga.* 574 (3), 578 (9) (19 S. E. 2d, 302).
See also cases cited in the annotations to Ga. Code Ann., § 110-104.

5. The evidence authorized the verdict, and having been approved by the trial judge, his judgment in overruling the motion for new trial must be

*Affirmed. All the Justices concur.*